## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EVANS DELIVERY COMPANY,  :
INC.
        **Plaintiff,**       :   CIVIL ACTION NO. 3:24-01277

          **v**          :      (JUDGE MANNION)

RABBIT LOGISTICS & COMPANY, :
LLC f/k/a RABBIT LOGISTICS,
LLC                       :

        **Defendant.**       :

## <u>MEMORANDUM</u>

Presently before the court is Plaintiff, Evans Delivery Company, Inc.'s ("Evans") motion for default judgement. (Doc. 8). On July 30, 2024, Evans initiated this diversity action against Defendant, Rabbit Logistics & Company, LLC ("Rabbit") (Doc. 1). In the complaint, Evans alleges that Rabbit breached their settlement agreement by failing to make timely payments owed for transportation services. (Id). A summons was issued to Rabbit on July 30, 2024, and a return receipt indicating service was filed with the court. (Docs. 2-4). Rabbit did not file an answer or otherwise timely respond to the complaint, and the Clerk of Court entered default against Rabbit for failure to answer or otherwise defend the instant suit on September 9, 2024. (Doc. 6). Accordingly, and for the reasons stated

below, the court will grant Evans' motion in part and award all relief requested minus late fees and costs, which Evans has not shown entitlement to.

## I.  **Background**

As illustrated in the Complaint, Rabbit engaged Evans around November 20, 2023, asking Evans to provide transportation services for his company. (Doc. 1, p.2). Specifically, Evans' job involved traveling to shipment facilities, picking up shipments, and transporting them to a destination. (Id.). After completing delivery, Evans would invoice Rabbit for the services it rendered and the costs it incurred. (Id.). Evans claims that Rabbit began to default on payments due for the services Evans rendered, which ultimately lead to the execution of a "Settlement and Release Agreement" (the "Settlement Agreement") signed by both parties on March 15, 2024. (Id.).

Under the first term of the Settlement Agreement, Rabbit agreed to pay Evans $170,310.00 (the "Settlement Amount") in accordance with a 46-week payment schedule to resolve the outstanding invoice payments. (Doc. 8-1, p.1). Under the second term, Rabbit agreed to pay all future invoices for transportation services within seven days of receiving the invoice. (Id.). Failure to make timely payments in accordance with either of these terms constituted an "Event of Default" pursuant to the third term of Settlement

Agreement. (Doc. 8-1, p.2). Evans alleges that Rabbit breached the Settlement Agreement both by failing to make the weekly settlement payments and failing to timely pay new invoices for transportation services rendered. (Doc. 8, p.2).

As a result of Rabbit's breach, Evans believes the entire Settlement Amount is due, along with interest at a rate of eighteen percent and late fees of ten percent on each outstanding invoice. Accordingly, Evans requests an entry of default judgment against Rabbit in the amount of $218,646.14 plus costs. (Doc. 8, p.4).

## II.  **Legal Standard**

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure allows a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see Broad. Music, Inc.v. Kujo Long, LLC*, 2014 WL 4059711, at *1 (M.D. Pa. Aug. 14, 2014) (entry of default judgment is typically appropriate for a defendant failing to appear at least until the defendant comes forward with a motion to set aside the default judgment pursuant to Rule 55(c)) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990)). "A consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v.*

*Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks and citations omitted). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted).

Prior to entering default judgment, the court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103. 108 (3d Cir. 2017) (citation omitted). "A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)). Federal Rules of Civil Procedure provides that a corporation must be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Further, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. *Trustees of Laborers Loc. No. 1174 Pension Fund v. DB Util. Contractors*, LLC, 2023 WL 3743573, at *2 (M.D. Pa. May 31, 2023).

Once a default is entered by the clerk of court, the court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served

4

defendant who does not file a timely responsive pleading. The entry of default is left primarily to the discretion of the district court." *Hritz*, 732 F.2d at 1180. But this discretion is not without limits; as the Third Circuit prefers "cases be disposed of on the merits whenever practicable." *Id*. at 1181. Thus, when reviewing a motion for default judgment the court must consider: "(1) the prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Once the *Chamberlain* factors are met, and default judgment has been entered, the well-pleaded, factual allegations of the complaint, except those relating to the damage amount, are accepted as true and treated as though they were established by proof. *See Coastal Mart, Inc. v. Johnson Auto Repair, Inc.*, 2001 WL 253873, at *2 (E.D. Pa. Mar. 14, 2001); *see also U.S. ex rel. Motley v. Rundle,* 340 F.Supp. 807, 809 (E.D. Pa. 1972) (*citing Thomson v. Wooster,* 114 U.S. 104, 114, 5 S.Ct. 788, 29 L.Ed. 105 (1885)). While these well-pleaded allegations are admitted and accepted, "the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.,* 555 F.Supp.2d 537, 541 (E.D. Pa. 2008) (citing *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990)). A

party's default does not suggest that the party has admitted the amount of damages that the moving party seeks. *See Comdyne,* 908 F.2d at 1149.

When determining damages in the event of a default judgement, "[i]f such a reasonable calculation cannot be made from the evidence and affidavits, then a hearing may be held to better determine the appropriate calculations." *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.,* 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009) (citing *Bakley v. A & A Bindery, Inc.,* 1987 WL 12871 (E.D. Pa. June 18, 1987). However, a hearing is not required where the damages can be determined from the evidence submitted, and "a reasonable calculation [can] be made by looking at the evidence and the affidavits submitted by the moving party." *Id.* (citing *J & J Sports Prods. V. Roach,* 2008 U.S. Dist. LEXIS 109055 (E.D. Pa. July 8, 2008)).

### B. Governing Law

A federal court sitting in diversity must apply state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). It is widely held that "[a] settlement agreement is a contract and is interpreted according to local law." *Wilcher v. City of Wilmington,* 139 F.3d 366, 372 (3d Cir. 1998). Paragraph twelve of the Settlement Agreement at the center of this controversy contains a choice of law provision selecting Pennsylvania law as the governing law and neither

party has disputed the validity of this provision. (Doc. 8-1, p.3). Therefore, the Court will apply Pennsylvania contract law in resolving this dispute.

## III.   Discussion

### A. Jurisdiction

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Pue v. New Jersey Transit Corporation*, 2023 WL 2930298 (3d Cir. 2023) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

Here, this Court has subject-matter jurisdiction under 28 U.S.C. §1332 because the case involves citizens of different states and the amount in controversy exceeds $75,000.00. Evans is a Pennsylvania corporation with its principal place of business in Pennsylvania and Rabbit is a Georgia limited liability company with its principal place of business in Georgia. As for the jurisdictional amount, Evans seeks $218,646.14 in damages. Thus, the parties are completely diverse and the amount in controversy exceeds the jurisdictional minimum.

This Court also has personal jurisdiction and venue pursuant to the forum selection clause in the fourth term of the Settlement Agreement, whereby it states that "[t]he Parties consent to the jurisdiction of the Middle

District of Pennsylvania for the resolution of all disputes arising out of or in connection with this Agreement". (Doc. 8-1, p.2).

### B. Entry of Default

The clerk properly entered default under Rule 55(a). Evans filed its Complaint on July 30, 2024. (Doc. 1). Subsequently, Evans submitted an Affidavit of Service from its process server affirming that on August 15, 2024, he personally served Adam Rutledge, Rabbit's authorized agent. (Doc. 4). Thus, Evans properly served Rabbit within 90 days after filing its Complaint. See Fed. R. Civ. P. 4(m) (a plaintiff must serve the summons and complaint within 90 days from filing). Rabbit did not respond to the Complaint within twenty-one days after service. *See* Fed. R. Civ. P. 12(a) (defendant must respond within twenty-one days of service). Thus, default was proper because Rabbit received fair notice of the claims against it but did not respond.

### C. Plaintiff's Allegations

Evans asserts a claim for breach of contract as a result of Rabbit's failure to abide by the terms of their Settlement Agreement. To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates*

*Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Evans has provided this Court with the Settlement Agreement signed by both parties, alleged in detail Rabbit's breach of the Settlement Agreement, and provided invoices for unpaid services in support of the alleged damages. Thus, Evans has made proper allegations.

### D. Factors for Default Judgment

The above analysis does not end the Court's inquiry. Even where default judgment is permissible, the Court must consider the three *Chamberlain* factors to determine whether default judgment is appropriate, specifically: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *See Chamberlain*, 210 F.3d at 164. Applying each factor in turn, this Court finds that entry of default judgment is appropriate in this case.

As for the first factor, "Plaintiffs will be prejudiced if the court declines to enter default judgment, as they are unable to proceed with the action due to the Defendant's failure to respond and have no other means of recovering against Defendant." *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL 3743573, at *2 (citing *Broad. Music, Inc. v. Kujo Long, LLC*, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (finding that the "[p]laintiffs will be prejudiced . . . by their current inability to proceed

with their action due to Defendants' failure to defend")). Evans is harmed by Rabbit's failure to respond to the Complaint, and Rabbit cannot evade liability for its contractual obligations by simply refusing to respond.

Second, Rabbit has not asserted a defense, neither by filing an answer to Evans' complaint nor by filing a responsive pleading to the present motion for default judgment. Accordingly, this Court is unable to construe a defense from Rabbit's silence. *See Id.* (finding that a litigable defense cannot be concluded from defendant's silence).

Finally, a defendant's failure to answer, respond, or otherwise participate in the litigation process without providing any good faith justification has qualified as "culpable conduct" when considering the entry of a default judgment. *See Joe Hand Promotions, Inc. v. Yakubets,* 3 F. Supp. 3d 261, 273 (E.D. Pa. 2014) (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.,* 657 F.Supp.2d 545, 554 (E.D. Pa. 2009)); *see also Perez v. Am. Health Care, Inc. 401(k) Plan*, 2015 WL 5682446, at *1 (D.N.J. Sept. 25, 2015) ("[W]here a defendant has failed to answer, move, or otherwise respond, the defendant is presumed culpable."). Here, Rabbit was properly served and failed to respond. The court "cannot discern from the record any excuse or justification for the Defendant's default apart from its culpability." *Trustees of Laborers Loc. No. 1174 Pension Fund*, 2023 WL

3743573, at *2. It is therefore appropriate for the Court to enter default judgment against Rabbit.

### E. Damages

Evans believes it is entitled to default judgment against Rabbit in an amount of $218,646.14. Specifically, Evans seeks $177,720.00 for the amount due under the Settlement Agreement and for transportation services provided after the Settlement Agreement was executed. Additionally, Evans seeks $17,772.00 in late fees, $23,154.14 in interest, and unspecified costs.[1] The court will discuss each category of damages below.

### i. Services Provided

The cost of services provided in the amount of $177,720.00 should be included in the award amount for two reasons. First, the Settlement Agreement expressly states that Rabbit "shall pay to [Evans] the total sum of $170,310.00 to resolve the unpaid charges owed for the [s]hipments." (Doc. 8-1, p.1). It further states that "[m]oving forward, [Evans] will issue invoices to [Rabbit] on Friday every other week (biweekly) for shipments moved and/or invoiced in the proceeding weeks. Invoices will become due and payable the Friday following the issuance of each invoice." (Id.). Thus,

---

[1] Plaintiff has not provided any information for the Court to consider additional, unspecified costs.

the Settlement Agreement amount, which became due in full upon Rabbit's default, along with the invoices issued after the execution of the Settlement Agreement are to be given full effect. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). ([w]here ... the language of the contract is clear and unambiguous, a court is required to give effect to that language").

Second, $177,720.00 is an appropriate service cost as it is supported by invoices provided by Evans which can be reasonably calculated to reflect that sum total. *See Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964) ("a claim for damages must be supported by a reasonable basis for calculation"). Rabbit is obligated to pay Evans for work performed and properly invoiced in accordance with the terms of the Settlement Agreement. Because Evans provided outstanding invoices in the amount of $177,720.00, which reflects the Settlement Agreement amount plus services rendered afterwards, the Court will add this to the award amount.

### ii. Interest

The third term of the Settlement Agreement includes the interest rate provision, stating that, in the event of a default, Rabbit's entire debt becomes due "along with an interest rate of 18%, which shall accrue from the date each invoice was first sent to [Rabbit] by Evans." (Doc. 8-1, p.2).

Thus, once Rabbit defaulted, interest began to accrue on each outstanding invoice retrospectively, beginning from the date Rabbit received each invoice. Because this provision is expressly written in the Settlement Agreement, and each invoice with an accurately calculated interest rate has been provided, Rabbit has a contractual obligation to pay these fees. *See, e.g.*, Restatement (Second) of Contracts §354 cmt. a ("[i]f the parties have agreed on the *payment of interest,* it is payable not as damages but pursuant to a contract duty that is enforceable"); *see also TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 262 (Pa. 2012) (because the Retail Member Agreement between the parties clearly provided for the payment of interest at a rate of 18% per annum on defendant's past due balances, defendant was contractually obligated to pay that interest). Therefore, the interest rate of $23,154.14 provided by Evans will also be added to the award amount.

### iii. Late Fees

Immediately following the interest rate provision mentioned above, the Settlement Agreement states "[a]dditionally, any payments made after the date listed in Exhibit B are subject to a late fee of ten percent (10%), which shall be made with the next payment owed by [Rabbit]." (Doc. 8-1, p.2). Using this provision, Evans tacked a ten percent late fee onto each

outstanding invoice for the total amount of $17,772.00. This court finds that Evans is not entitled to these late fees for at least two reasons.

First, accepting a ten percent late fee for each invoice would simply misconstrue the plain language of the Settlement Agreement. The payments listed in Exhibit B to Settlement and Release Agreement ("Exhibit B") to which these late fees are said to apply represent the weekly recurring payments for the Settlement Amount, not the individual invoice payments. In contrast to the interest rate provision, the late fee provision fails to mention anything regarding the outstanding invoice payments.

Second, the recurring payments in Exhibit B are subject to the following acceleration clause:

> "Upon an [e]vent of [d]efault, Evans shall provide notice to [Rabbit] via email sent to [Rabbit's email address]. [Rabbit] will have five (5) days from the date any such notice is sent by Evans to cure the [event] of [d]efault ("Cure"). If [Rabbit] fails to cure within the 5 days, the total amount then owed by [Rabbit] to Evans shall become immediately due [. . .]."

(Doc. 8-1, p.2).

Once the default from Rabbit caused the entire Settlement Amount to become due, the recurring payments listed in Exhibit B were no longer an acceptable form of payment unless Evans chose to waive this acceleration

14

clause. Applying its plain meaning, the late fee provision suggests that, in the event that Rabbit misses one of the payment dates in Exhibit B, thereby defaulting on the Settlement Agreement, but "cures" the default within the five-day period, the ten percent fee would be added onto the next recurring payment. However, after the curing period lapsed and the entire Settlement Amount became due, the recurring payments in Exhibit B were no longer an acceptable form of payment and the late fee provision became ineffective. Therefore, Evans may not apply a ten percent late fee to each outstanding invoice as part of the award amount.

## IV. Conclusion

For all the foregoing reasons, Plaintiff's motion for default judgment is granted in part. An appropriate order and a judgment in the amount of $200,874.14 will be entered. Plaintiffs shall submit a form of judgment within five (5) working days.

**MALACHY E. MANNION**
**United States District Judge**

**Date: January 3, 2025**
24-1277-01

15